# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ASHLEY NICHOLE LOWE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>**Acting Commissioner of the Social** )<br>**Security Administration,** )<br>)<br>Defendant. ) | Case No. CIV-14-248-SPS |

## OPINION AND ORDER

The claimant Ashley Nichole Lowe requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born September 2, 1989, and was twenty-two years old at the time of the administrative hearing (Tr. 44, 136). She has a high school education and has worked a custodian/janitor (Tr. 25, 67-9, 151). She alleges that she has been disabled since December 2, 2008, due to lupus, night sweats, joint pain, fatigue, fever, panic attacks, arm and leg weakness, and chronic pain (Tr. 150).

### Procedural History

On March 16, 2010, the claimant filed for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Jeffrey S. Wolfe held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 25, 2012 (Tr. 19-26). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that she needed to have a sit/stand option allowing her to change postural positioning every thirty minutes. Additionally, the ALJ found the claimant had moderate limitations with her ability to understand, remember, and carry out detailed instructions (Tr. 22). The ALJ concluded that although the claimant could not return to her past relevant work,

she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, food order clerk, charge account clerk, and clerical sorter (Tr. 26).

## Review

The claimant contends that the ALJ erred by: (i) failing to consider and properly weigh all of the evidence in making his RFC findings, (ii) failing to support his step five findings with substantial evidence, and (iii) failing to properly assess the claimant's credibility. The Court agrees with the claimant's first contention and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairment of systemic lupus erythematosus (lupus) and the nonsevere impairment of anxiety disorder not otherwise specified (Tr. 21). The relevant medical evidence as to her physical impairments reveals that Dr. Manuel Calvin, a rheumatologist, treated the claimant for lupus since at least March 2008. The claimant consulted with Dr. Calvin on a number of occasions from March 2008 through September 2011, who assessed the severity of her lupus as mild/moderate (Tr. 264-80, 382-84, 401- 09). Physical examinations of the claimant's musculoskeletal system repeatedly found her to have full range of motion, but also revealed consistent swelling, tenderness, and/or pain in her neck, hands, knees, back, shoulders, feet and/or ankles (Tr. 266, 271, 275, 279, 383, 402, 405). The claimant's treatment largely consisted of steroids, and anti-inflammatory, antimalarial, and pain medications (Tr. 264, 267-69, 272-73, 276, 280, 383, 402, 405). Dr. Calvin also prescribed Xanax for the claimant's anxiety (Tr. 264, 269, 272, 276, 383, 402, 405).

Dr. Calvin provided two opinions relating to the claimant's lupus. On July 30, 2009, he wrote a letter stating the claimant was currently permanently disabled (Tr. 268). On August 11, 2010, he completed a Medical Source Statement representative of the claimant's functional abilities on an "average day," noting "many days she [was] more restricted and some days she [could] do more" (Tr. 395). Dr. Calvin opined that during an eight-hour work day, the claimant could sit for four hours and stand/walk for ten to thirty minutes at a time for a total of one hour, lift/carry up to ten pounds occasionally and eleven to twenty-five pounds rarely, but could never lift/carry anything above twenty-six pounds (Tr. 394). Additionally, he indicated she was limited in the use of her feet for repetitive movements and in the use of her hands for repetitive movement in grasping and fingering. He said she could bend, squat and reach occasionally; never crawl or climb; and was moderately restricted in activities involving unprotected heights, being around moving machinery, driving and vibration and markedly restricted in activities involving exposure to dust, fumes and humidity and exposure to marked changes in temperature and humidity (Tr. 395).

State reviewing physician Dr. Kenneth Wainner completed a Physical Residual Functional Capacity Assessment on July 12, 2010, and found the claimant capable of performing light work with limited pushing and/or pulling in her upper extremities (Tr. 374-81).

On May 19, 2010, the claimant called paramedics claiming she overdosed on over-the-counter pain medication and was transported to the St. Francis Hospital Emergency Room via ambulance (Tr. 556, 567). She informed first responders that she ingested

-5-

eighty Motrin, five ibuprofen, ten Tylenol, and four Aleve in an attempt to harm herself because of an argument she had with her mother and because she was depressed about having lupus (Tr. 563, 567). Lab tests conducted the same day revealed a therapeutic level of acetaminophen and no detectable levels of salicylate, alcohol, amphetamines, barbiturates, benzodiazepines, cannabinoids, cocaine or opiates (Tr. 545-47). The attending physician assessed the claimant's behavior as an acute suicidal gesture and transferred her to the Tulsa Center for Behavioral Health (TCBH) (Tr. 557-58). During the claimant's brief stay at TCBH, Juan Lopes, LPC, LADC, conducted a mental status exam and diagnosed her with a mood disorder not otherwise specified and assessed a global assessment of functioning (GAF) score of 47 (Tr. 603-04).

Dr. Michael Morgan conducted a psychological consultative examination on June 2, 2010 (Tr. 355-58). He diagnosed the claimant with anxiety disorder not otherwise specified and assessed a GAF score of 81-85 (Tr. 358). He noted the claimant's anxiety appeared "transient in nature" and likely stemmed from the combined effects of her medical condition, the effects of her prescribed medications, and her ongoing financial difficulties (Tr. 357).

State reviewing physician Dr. Janice Smith completed a Psychiatric Review Technique Form (PRTF) on June 15, 2010, and found the claimant's anxiety not otherwise specified related to a medical disorder was a nonsevere impairment, and found she had mild limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace (Tr. 360, 370).

At the administrative hearing, the claimant testified she was diagnosed with lupus in high school (Tr. 49). She stated she had pain and swelling in her back, under her knees, and in her joints (Tr. 52). She testified she could not sit or stand for long periods of time, but "guessed" she could do a job where she was allowed to sit or stand; however, she then mentioned she also has fatigue and is unable to stay up all day (Tr. 54). She stated she has three or four good days and two or three bad days per week and that her lupus "flares up" two or three times per week (Tr. 55-58). As to her daily activities, she testified that she was capable of doing usual household chores in a normal time frame, but that she does not do any chores because she isn't required to (Tr. 56-57).

In his written opinion, the ALJ summarized the claimant's testimony as well as most of the medical record. At step two, he found the claimant's anxiety disorder nonsevere, but failed to mention the claimant's emergent treatment pertaining to her mental health (Tr. 21, 415-19, 544-75). At step four, the ALJ gave little weight to Dr. Calvin's August 11, 2010, Medical Source Statement because he found it inconsistent with Dr. Calvin's own treatment notes and the treatment notes of others. The ALJ declined to give Dr. Calvin's July 30, 2009, letter controlling weight because he found it lacked substantial evidence and related to an issue reserved to the Commissioner (Tr. 25).

The medical opinions of a treating physician such as Dr. Calvin are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled

to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was not required to give controlling weight to Dr. Calvin's opinion that the claimant was permanently disabled, but he was required to evaluate for controlling weight Dr. Calvin's opinions as to the claimant's functional limitations. Dr. Calvin's August 11, 2010, Medical Source Statement contained functional limitations that the ALJ rejected as not "supported by his own records or the records of others" (Tr. 24). The ALJ supported this finding by citing to a single treatment note where Dr. Calvin stated the claimant's lupus was "under control" and by inferring that Dr. Calvin's treatment notes indicated the claimant's lupus caused her mild/moderate restrictions (Tr. 24). In making such findings, however, the ALJ overlooked the substantial evidence that Dr. Calvin consistently found a combination of swelling, tenderness, and/or pain in the claimant's neck, hands, knees, back, shoulders, feet and/or ankles on physical examination (Tr. 266,

271, 275, 279, 383, 402, 405).  Thus, the ALJ erred by failing to discuss *all* of the evidence related to the claimant's impairments and citing only evidence favorable to his finding of nondisability.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).  Additionally, the ALJ inferred from Dr. Calvin's assessment of mild/moderately severe lupus that the claimant was mildly/moderately restricted by her lupus (Tr. 280, 382, 404).  *See Langley,* 373 F.3d at 1121 ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*"), *quoting McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original].

Although the ALJ was not required to give Dr. Calvin's opinion that the claimant was permanently disabled controlling weight, *see, e. g.,* 20 C.F.R. §  416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he nevertheless *was* required to determine the proper weight to give such a finding by applying the factors in 20 C.F.R. §§ 404.1527, 416.927.  Instead, the ALJ simply recited this fact and concluded, without discussion, that Dr. Calvin's opinion

lacked substantive evidence. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.").

Lastly, the ALJ overlooked probative evidence regarding the claimant's mental impairments. "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton,* 79 F.3d at 1010, *citing Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir. 1984). The ALJ only discussed evidence that supported a finding of nondisability; he did not, for example, discuss the fact that the claimant sought emergent treatment on May 19, 2010, claiming she ingested toxic levels of over the counter medications, and was transferred to the Tulsa Center for Behavioral Health where she was diagnosed with mood disorder not otherwise specified and assessed a GAF score of 47 (Tr. 544-77, 603-04). Nor did the ALJ discuss the fact that the claimant sought emergent treatment for a panic attack on October 8, 2010 (Tr. 415-19). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no

further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly analyze all of the claimant's medical evidence of record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2015.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**